## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

DESARAE SURRATT,

       Plaintiff,

   v.

ADT LLC of Delaware, d/b/a ADT
SECURITY SERVICES,

       Defendant.

**Case No.:  0:19-cv-02833-PAM-HB**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ADT LLC'S MOTION TO STAY

Pursuant to the doctrine of primary jurisdiction and the Court's inherent power to control its docket, Defendant ADT LLC of Delaware, d/b/a ADT Security Services ("ADT"), respectfully requests that the Court stay this litigation pending the Federal Communications Commission's ("FCC" or "Commission")[1] forthcoming rulings on (1) the Telephone Consumer Protection Act's ("TCPA") definition of "automatic telephone dialing system" ("ATDS" or "autodialer") and (2) whether, under the statute, a consumer may unilaterally revoke the prior express consent that she has provided to the caller as bargained-for consideration underlying the contract between the parties.[2]

---

[1]    The FCC is the federal agency charged with construing and enforcing the TCPA.

[2]    On the morning of November 26, 2019, counsel for ADT attempted to meet-and-confer telephonically with Plaintiff's counsel regarding resolution of this Motion. Plaintiff's counsel was unavailable and counsel for ADT left a voice message requesting a return call.  Given Plaintiff's counsel's unavailability and pursuant to LR 7.1(a)(1)(A), ADT will promptly supplement this Motion with a Meet-and-Confer Statement once the parties are able to meet-and-confer on the relief requested by ADT herein.

## I.   __INTRODUCTION__

Plaintiff claims that ADT called her cell phone in an attempt to collect on a delinquent account.  In doing so, she alleges that ADT violated the TCPA by using an autodialer to place those collection calls and/or by leaving prerecorded messages without her prior express consent (or after she purportedly revoked such consent).

The TCPA and its implementing regulations established by the FCC define an ATDS to be "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator . . . and to dial such numbers."  47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2).  The TCPA generally prohibits non-emergency autodialed calls and/or calls that deliver a prerecorded message to cell phone numbers unless the calls are made with "the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii).  It is not a violation of the TCPA to place a non-autodialed, unsolicited call; it is not a TCPA violation to place hundreds of non-autodialed, unsolicited calls seriatim.  It also is not a violation of the TCPA to place autodialed and/or prerecorded message calls if the recipient has provided her prior express consent to receive such calls and not subsequently revoked such consent.  Thus, the determinations of whether a defendant had the plaintiff's consent, whether she could and did revoke such consent, and whether the defendant's calling platform is or is not an ATDS often are dispositive in TCPA litigation.

As both the FCC and the courts recently have noted, there is "a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the restrictions on unconsented calls."  *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir.

2018); FCC Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 2-3 (May 14, 2018) (hereinafter, the "May 2018 Public Notice")[3] (questioning "how to interpret 'capacity' [in the ATDS definition] in light of the [*ACA Int'l*] court's guidance").[4]  Further, courts are split on whether a consumer may unilaterally revoke her prior express consent given to a caller when such consent was part of the consideration provided by the consumer to the caller as part of a binding contract.  *See, e.g.*, *Reyes v. Lincoln Auto Fin Servs.*, 861 F.3d 51, 55-59 (2d Cir. 2018) (holding that TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange underlying a contract to unilaterally revoke that consent);

---

[3]     A copy of the Public Notice is attached hereto for the Court's convenience as Exhibit "1" and is available at https://ecfsapi.fcc.gov/file/0514497027768/DA-18-493A1.pdf (last accessed Nov. 26, 2019).  The Court may take judicial notice of the Public Notice, comments submitted in response, and petitions to the FCC requesting declaratory rulings.  *Gusman v. Comcast Corp.*, No. 13CV1049, 2014 WL 2115472, at *5 (S.D. Cal. May 21, 2014).

[4]     Specifically, the FCC posed the following questions, among others, regarding how to determine whether a calling platform is an ATDS under the TCPA:

> For example, how much user effort should be required to enable the device to function as an automatic telephone dialing system?  Does equipment have the capacity if it requires the simple flipping of a switch?  If the addition of software can give it the requisite functionality?  If it requires essentially a top-to-bottom reconstruction of the equipment?  In answering that question, what kinds (and how broad a swath) of telephone equipment might then be deemed to qualify as an automatic telephone dialing system?

May 2018 Public Notice, at 2.  *See also* FCC, *Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, at 1-2 (Oct. 3, 2018) ("October 2018 Public Notice") (attached hereto as Exhibit "2" and available at https://docs.fcc.gov/public/attachments/DA-18-1014A1.pdf (last accessed Nov. 26, 2019)).

*Thompson-Harbach v. USAA Fed. Savings Bank*, 359 F. Supp. 3d 606, 628-632 (N.D. Iowa 2019) (while defendant cannot prohibit all revocation of consent via contract, it can provide reasonable method of revocation which must be followed).  Yet, the FCC is poised to eliminate much of the ATDS definition "fog of uncertainty" and resolve the split amongst courts as to revocation of consent as it currently considers both issues.  *See* May and October 2018 Public Notices.[5]  A favorable ruling on these issues will render conclusive that the collection calls that ADT placed to Plaintiff were not made without her prior express consent and, thus, do not constitute violations of the TCPA, and/or that the calls were not made with a prohibited ATDS in any event.

As detailed below, there is ample support for granting ADT's Motion to Stay. But, the Court need not look any further than the Southern District of Florida's July 25, 2018, order entered in *Buhr, et al. v. ADT LLC*, No. 9:18-cv-80605 (S.D. Fla.) – a putative TCPA class action filed against ADT arising out of alleged autodialed and prerecorded message collection calls – ***granting ADT's motion to stay pending resolution of the ongoing FCC proceedings for the same reasons detailed in this Motion.*** *Buhr*, July 25, 2018 Order (ECF 40) ("[ADT's] Motion to Stay is granted for all

---

[5]     The FCC's May and October 2018 Public Notices followed a joint trade petition to the Commission, requesting that, among other things, the FCC (1) confirm that, in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions. *See* Petition for Declaratory Ruling, U.S. Chamber of Commerce and ACA International, *et al*., CG Docket 02-278, at i, 20, 27 (FCC May 3, 2018) (hereinafter, "Joint Trade Petition").   A copy of the Joint Trade Petition is attached hereto for the Court's convenience           as          Exhibit          "3"          and          available          at https://ecfsapi.fcc.gov/file/1051094891940/Petition%20for%20Declaratory%20Ruling.pdf (last accessed Nov. 26, 2019).

of the reasons set forth in the Motion. This case is stayed pending a ruling from the FCC

that clarifies the definition of 'an automatic telephone dialing system' under the TCPA as

discussed in [ADT's] Motion.   In the event the FCC has not rendered such a ruling,

however, within five months of the date of rendition of this Order, the parties are ordered

to so apprise the Court in a status report.");[6] *see also Laccinole v. ADT LLC*, No. 1:18-cv-

00481, Nov. 9, 2018 Minute Order (granting ADT's motion to stay TCPA case alleging

unsolicited autodialed and prerecorded message collection calls "for the reasons stated in

[ADT's] Memorandum of Law.   This action is hereby stayed pending a ruling from the

[FCC] on how to interpret and apply the definition of 'automatic telephone dialing

system' under the Telephone Consumer Protection Act, 47 U.S.C. § 227, or until further

order of the Court.").

Because the FCC has been designated by Congress as the agency responsible for

interpreting the TCPA, and because the FCC is in the middle of doing just that, the Court

should exercise its discretion to stay this litigation under the primary jurisdiction doctrine

pending the FCC's resolution of the issues the Commission raised *sua sponte* in its own

May and October 2018 Public Notices.   Alternatively, the Court should stay this case

pursuant to its inherent powers to control its docket.   If this case proceeds before the FCC

issues its decision, the Court risks entering an order contrary to the FCC's ruling and

---

[6]      In mid-August 2018, the *Buhr* plaintiff moved for reconsideration of the court's order staying the litigation pending the ongoing FCC proceedings.   *See Buhr* ECF 41.   On August 29, 2018, after ADT filed its opposition, the court denied the plaintiff's motion. *See Buhr*, Aug. 29, 2018 Paperless Order (denying plaintiff's motion "for the reasons set forth in [ADT's] Response").   Undeterred, in January 2019, the *Buhr* plaintiff moved to lift the stay.   *See Buhr* ECF 47.   The court denied that motion as well.   *See Buhr*, Jan. 14, 2019 Paperless Order.

which is wrong as a matter of law under the TCPA.

## II.   BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff claims that, since at least June 20, 2019, ADT has utilized an ATDS and/or prerecorded messages to place debt collection calls to her cell phone.   Compl. (ECF 1-1) ¶¶ 10, 11, 15.   She further alleges that these calls were made without her prior express consent to receive such calls and/or after she revoked any prior express consent that she had previously provided to ADT, and, as such, ADT violated the TCPA.   *Id.* ¶¶ 14-18.   Among other relief, Plaintiff seeks statutory damages of $1,500 for each call that she allegedly received from ADT.   *Id.*, Prayer for Relief, at (1).

### B.   ADT's Calling Platforms Do Not Have The Capacity to Store and Produce Numbers and Dial Those Numbers Without Human Involvement

ADT utilized three different calling platforms when making debt collection calls to Plaintiff: LiveVox's Human Call Initiator ("HCI"), LiveVox's Quick Connect ("QC"), and Avaya Proactive Contact 5.1 ("APC 5.1").   November 25, 2019 Declaration of Thomas Woods ("Woods Decl.") ¶ 2.   None of those three platforms has the capacity to produce or store telephone numbers using a random or sequential number generator, nor can they dial those numbers without human involvement.   *Id.* ¶¶ 7-8; *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-cv-929, 2016 WL 7851415, at *2 (M.D. Fla. Sept. 2, 2016) ("Each call initiated from HCI must be initiated by a human . . . HCI does not . . . incorporate any random or sequential number generator").   In fact, neither HCI, QC, nor APC 5.1 has ever had this capability.   Woods Decl. ¶ 7-8; *see also Pozo*, 2016

WL 7851415, at *2 (regarding HCI).

The Northern District of Illinois has described HCI's characteristics and operation

as follows:

> [T]he Human Call Initiator is a human initiated and human controlled dialing system that requires a TSI agent to manually initiate every call. Each call initiated from a Human Call Initiator must be initiated by a human "clicker agent." The clicker agent is responsible for confirming that the number to be called is the correct number, and after doing so, launching the call by physically clicking the number. When any [defendant] representative uses the Human Call Initiator system, he or she must click on a dialogue box to confirm the launching of a call to a particular telephone number. The call cannot be launched unless the clicker agent clicks on the dialogue box.

*Arora v. Transworld Sys., Inc.*, No. 1:15-cv-04941, 2017 WL 3620742, at *1 (N.D. Ill.

Aug. 23, 2017).[7]  HCI does not deliver prerecorded messages and is incapable of doing

---

[7]    Every court that has evaluated whether HCI is an autodialer under the TCPA of which ADT is aware has held that it is not. *See Ammons v. Diversified Adjustment Serv., Inc.*, No. 2:18-cv-06489, Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. (ECF 49), at 8-10 (C.D. Cal. Oct. 9, 2019), *pl.'s mot. for reconsideration denied*, ECF 70 (C.D. Cal. Oct. 21, 2019); *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 272-74 (D.N.J. 2018) ("Although LiveVox HCI's level of human intervention may seem minimal, every court to examine the issue has held that the clicker agent's role prevents the system from qualifying as an ATDS under the statute."); *Hatuey v. IC Sys., Inc.*, No. 1:16-cv-12542, 2018 WL 5982020, at *7 (D. Mass. Nov. 14, 2018); *Fleming v. Assoc. Credit Servs., Inc.*, 342 F. Supp. 3d 563, 578 (D.N.J. 2018); *Arora*, 2017 WL 3620742, at *2-3; *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. 15-7572, 2017 WL 2812884, at *4 (D.N.J. June 29, 2017) ("Defendant's HCI system is not an autodialer for purposes of the TCPA"); *Smith v. Stellar Recovery, Inc.*, No. 15-cv-11717, 2017 WL 955128, at *6 (E.D. Mich. Mar. 13, 2017) (concluding that HCI "is characterized by one key factor that separates it from autodialers: it requires human intervention – the clicker agent – to launch an outgoing call," and, because "the basic function of an autodialer is the capacity to dial phone numbers 'without human intervention,' and the HCI system lacks that capacity, the HCI is not an autodialer."); *Pozo*, 2016 WL 7851415, at *6 ("In sum, because Stellar's Human Call Initiator system required its representatives to manually dial all calls and was not capable of making any

so. *Pozo*, 2016 WL 7851415, at *3 ("this [prerecorded message] claim is unsupported because the deposition is clear that HCI does not have any ability to leave prerecorded messages").

APC 5.1, in turn, is configured to operate in one of two different dialing modes – managed preview mode and predictive mode. Woods Decl. ¶ 3. In managed preview mode, the account information and telephone number for a customer with a past due balance appear on an ADT call representative's computer screen. *Id.* ¶ 4. The call representative, then, makes a decision whether to click on the telephone number to launch the call or not; no call is placed unless the telephone number is clicked by (*i.e.*, with the intervention of) ADT's call representative. *Id.* This type of calling often is referred to as "point and click dialing" and nearly universally has been held not to constitute autodialing under the TCPA. *See*, *e.g.*, *Pozo*, 2016 WL 7851415, at *3-4 ("dialing systems which require agents to use an electronic 'point and click' function to initiate calls are not autodialers because human intervention is required to initiate the calls") (citing numerous cases).

In predictive mode, an ADT employee logs into the APC 5.1 system and uploads a list of specific ADT telephone numbers for customers with past due balances. *Id.* ¶ 5. Next, an ADT employee turns the system on, selects the numbers to be called, and the system dials those numbers – and only those numbers. *Id.* Calls are connected to live ADT call representatives when they are answered. *Id.* In other words, there is human

---

calls without human intervention, Stellar did not employ an autodialer. Because Stellar did not make autodialed calls, Stellar cannot be liable under the TCPA.").

involvement in logging into the APC 5.1 system; the creation, uploading, and selection of the specific telephone numbers to be called; the initiation of the dialing system; and during the telephone calls themselves.  The predictive mode of APC 5.1 is used by ADT to dial calls to cellular telephone numbers for which ADT has the customer's consent, as well as residential landline telephone numbers (as opposed to cell phones) because no consumer consent is necessary to place such calls under the TCPA.  *Id.*, ¶ 6.  *See also Orsatti v. Quicken Loans, Inc.*, No. 2:15-cv-09380, 2016 WL 7650574, at *3 (C.D. Cal. Sept. 12, 2016) (confirming consent is required only for prerecorded message calls to a residential phone number, not autodialed calls).  Chief Judge Jarvey of the Southern District of Iowa has held that APC 5.1 is not an autodialer under the TCPA as a matter of law.  *See Murray v. Fist Nat'l Bank of Omaha*, No. 1:15-cv-00059, Order (ECF 33), at 5 (S.D. Iowa Jan. 6, 2017) (Plaintiff's claim for "statutory damages fails because FNBO did not violate the TCPA by placing automated calls to her cellular telephone").

Finally, LiveVox's QC platform operates much as the APC 5.1 predictive mode and requires the same level of human involvement.  Woods Decl. ¶ 8.  Courts within the Eighth Circuit, including this one, and elsewhere have found that the FCC's previous 2003 and 2008 rulings, which held that predictive dialers may constitute ATDS even though they do not randomly or sequentially generate the telephone numbers that are dialed, were invalidated by *ACA Int'l* and, thus, no longer are binding.  *See, e.g.*, *Thompson-Harbach*, 359 F. Supp. 3d at 621-22 (holding that "the *ACA International* holding invalidated the FCC's 2003 Order and 2008 Declaratory Ruling insofar as the 2003 Order and 2008 Declaratory Ruling also define a predictive dialer as an ATDS,

9

even when the predictive dialer lacks the capacity to generate phone numbers randomly or sequentially and then dial them") (citing cases); *Roark v. Credit One Bank, N.A.*, No. 16-173 (PAM/ECW), 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018) (Magnuson, J.) ("Roark is incorrect that *ACA Int'l* has no bearing on previous FCC rulings that determined that predictive dialing systems are autodialers.  The D.C. Circuit in fact rejected this very argument. . . . Here, there is no question that the devices used by Credit One's agents are predictive dialing systems.  However, in the wake of *ACA Int'l*, predictive dialing systems are no longer always considered autodialers under the TCPA. Rather, the correct inquiry is whether a device can generate numbers to dial either randomly or sequentially.").

> ### C.    The FCC is Actively Considering the ATDS Definition, the Meaning of "Capacity," Whether Predictive Dialers are Autodialers, and Whether and How an Individual May Revoke Consent Provided as a Contractual Term

As noted above, the TCPA restricts calls to cell phones through the use of an ATDS and/or which deliver a prerecorded message without the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).  Thus, assuming that a caller does not have the called party's consent, TCPA liability only lies if the caller utilized an autodialer or delivered a prerecorded message.  That is the crux of Plaintiff's claim – that ADT "place[d] these [collection] calls to Surratt using a robodialer, an artificial voice, or both." Compl. ¶ 11.  Thus, the salient questions for TCPA liability to attach in this case under the TCPA, thus, boil down to: (1) whether Plaintiff was permitted to unliterally revoke the prior express consent that she provided to ADT as bargained-for consideration

underlying the contract between the parties and, if so, whether she in fact revoked such consent in the manner prescribed by the contract; and (2) whether ADT used an autodialer to place collection calls to her.

According to the May and October 2018 Public Notices, the FCC is currently considering the ATDS and revocation of consent issues it raised *sua sponte*, which are directly on point:

> [W]e seek comment on what constitutes an "automatic telephone dialing system." . . . We seek comment on how to interpret "capacity" in light of the [*ACA Int'l*] court's guidance. . . . We seek further comments on the functions a device must be able to perform to qualify as an [ATDS]. . . . How "automatic" must dialing be for equipment to qualify as an [ATDS]? Does the word "automatic" "envision non-manual dialing of telephone numbers"? Must such a system dial numbers without human involvement? . . . "[D]oes the bar against 'making any call using' an [ATDS] apply only to calls made using the equipment's [ATDS] functionality? . . . If a caller does not use equipment as an [ATDS], does the statutory prohibition apply?

*     *     *

> [W]e seek comment on how a called party may revoke prior express consent to receive robocalls.  The court found that "a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller."  Such a standard, the court made clear, means "callers . . . have no need to train every retail employee on the finer points of revocation" and have "every incentive to avoid TCPA liability by making available clearly-defined and easy-to-use opt-out methods."  We seek comment on what opt-out methods would be sufficiently clearly defined and easy to use such that "any effort to sidestep the available methods in favor of idiosyncratic or imaginative revocation requests might well be seen as unreasonable."

May 2018 Public Notice, at 2-3; *see also* FCC, *Statement of Commissioner Michael O'Rielly on D.C. Circuit TCPA Decision* (Mar. 16, 2018) ("I believe there is an opportunity here for further [FCC] review [of whether contractual consent may be

unliterally revoked] in order to square it with the Second Circuit's more appropriate approach [in *Reyes*]").[8]  The October 2018 Public Notice similarly seeks comment on the ATDS issue:

> We seek further comment on how to interpret and apply the statutory definition of automatic telephone dialing system, including the phrase "using a random or sequential number generator," in light of the recent decision in *Marks* [*v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)], as well as how that decision might bear on the analysis set forth in *ACA International*.  To the extent the statutory definition is ambiguous, how should the Commission exercise its discretion to interpret such ambiguities here?  Does the interpretation of the *Marks* court mean that any device with the capacity to dial stored numbers automatically is an automatic telephone dialing system?  What devices have the capacity to store numbers?  Do smartphones have such capacity?  What devices that can store numbers also have the capacity to automatically dial such numbers?  Do smartphones have such capacity?  In short, how should the Commission address these two court holdings?  We also seek comment on any other issues addressed in the *Marks* decision that the Commission should consider in interpreting the definition of an "automatic telephone dialing system.

The FCC also is considering whether a predictive dialer that dials from a list of specific telephone numbers falls within the autodialer definition.  *See* May 2018 Public Notice, at 2-3 & n.19.

The Commission may determine that the mere ability of a random or sequential number generator to store and produce numbers, and dial those numbers is not enough for equipment to constitute an ATDS.  Rather, the FCC may well conclude that those numbers must be able to be dialed without any human involvement.  The Commission also may issue a decisive ruling that predictive dialers, which call numbers from a

---

[8]     *Available at* https://www.fcc.gov/document/comm-orielly-statement-dc-circuit-tcpa-decision (last accessed Nov. 19, 2019).

specific list, are not autodialers.[9]  Similarly, the FCC may do exactly what Commissioner

---

[9]     In *ACA Int'l*, the D.C. Circuit explained the murkiness caused by the FCC's various rulings on whether a predictive dialer that calls from a list, as opposed to the dialer itself creating and dialing a random or sequential set of numbers constitutes an ATDS:

> [T]he Commission suggested it saw a difference between calling from a list of numbers, on one hand, and "creating and dialing" a random or arbitrary list of numbers, on the other hand.  Or as the Commission has elsewhere said, numbers that are "randomly or sequentially generated" differ from numbers that "come from a calling list." . . . So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity?  The [FCC's 2015 omnibus TCPA] ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers).  It might be permissible for the Commission to adopt either interpretation.  But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order.

885 F.3d 702-03 (internal citations omitted).

Since *ACA Int'l*, courts are split on whether the FCC's previous predictive dialer rulings were, in effect, vacated by the D.C. Circuit.  For example, the *Thompson-Harbach* court undertook a thorough and detailed analysis of *ACA Int'l* and held that "[t]his Court sides with other courts . . . in finding that the *ACA International* holding invalidated the FCC's 2003 Order and 2008 Declaratory Ruling insofar as the 2003 Order and 2008 Declaratory Ruling also define a predictive dialer as an ATDS, even when the predictive dialer lacks the capacity to generate phone numbers randomly or sequentially and then dial them").  *Thompson-Harbach* relied, in part, on this Court's decision in *Roark*, which rejected the plaintiff's argument "that ACA Int'l has no bearing on previous FCC rulings that determined that predictive dialers are autodialers.  2018 WL 5921652, at *2-3.  Other courts have reached the same conclusion: that the FCC's predictive dialer rulings were invalidated by *ACA International*.  *See, e.g.*, *Marks*, 904 F.3d at 1049; *Pinkus v. Sirius XM Radio, Inc.*, the Northern District of Illinois undertook a thorough and detailed analysis of *ACA Int'l* and held that "*ACA International* invalidated not only the 2015 Declaratory Ruling's interpretation of the statutory term ATDS, but also the [FCC's previous predictive dialer rulings'] interpretation of that term."  319 F. Supp. 3d 927, 932 (N.D. Ill. 2018) (concluding that predictive dialers, which dial from a set list of specific numbers are not TCPA autodialers as a matter of law); *Sessions v. Barclays Bank Del.*, 317 F. Supp. 3d 1208, 1212-13(N.D. Ga. June 25, 2018) ("the D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS").  However, in *Reyes v. BCA Fin. Services, Inc.,* the court

O'Rielly said the Commission now has an opportunity to do: "square" the issue of whether a consumer may revoke bargained-for prior express consent underlying a contract "with the Second Circuit's more appropriate approach" in *Reyes*, which held that, under contractual principles, a consumer may not revoke such contractual consent unilaterally.  Or the agency may take a middle path and adopt the *Thompson-Harbach* approach that, while a consumer may revoke consent provided under a contract, she must do so in accordance with the reasonable means of revocation set forth in that agreement.  These determinations likely will be dispositive on the issues raised by Plaintiff's Complaint.

## III.   LEGAL ARGUMENT

### A. Staying This Litigation is Appropriate Under the Primary Jurisdiction Doctrine

A district court has "broad" discretion to stay proceedings, *Lessard v. Volkswagen Corp.*, No. 16-cv-0754 (WMW/TNL), 2016 WL 3004631, at *1 (D. Minn. May 24, 2016), as part of its inherent authority "to control the disposition of cases on its docket 'with economy of time and effort for itself, for counsel and for litigants.'"  *Busch v. Bluestem Brands, Inc.*, No. 16-cv-0644 (WMW/HB), 2017 WL 5054391, at *1 (D. Minn. Feb. 22, 2017) (quoting *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013)).  How this

---

found that *ACA Int'l* did not vacate those orders, but recognized that the FCC's position is not clear and that either interpretation of ATDS by the FCC may be permissible.  No. 16-24077, 2018 WL 2220417, at *9 (S.D. Fla. May 14, 2018).  The *Reyes* court went on to note, though, that *ACA Int'l* gave it "considerable pause" with respect to whether predictive dialers are automatic telephone dialing systems under the TCPA.  *Id.* at *11. Notably, the *Reyes* court recently stayed that case.  *Reyes*, Order Granting Def.'s Mot. to Stay Proceedings (ECF 2000) (S.D. Fla. July 10, 2019).  It is very likely that the FCC will bring clarity to the predictive dialer issue.

can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Lessard*, 2016 WL 3004631, at *1 (citation omitted). A court's power to stay proceedings is a well-established accouterment of its broad discretion to manage and dispose of cases on its docket. A properly granted stay operates as an invaluable tool to conserve party and judicial resources, avoid inconsistent procedural and legal rulings, and reduce uncertainty. *Unison Co., Ltd. v. Juhl Energy Devel., Inc.*, No. 13-3342 ADM/JJK, 2014 WL 2565652, at *3 (D. Minn. June 6, 2014); *see also Comprehensive Health Care Sys. of Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-cv-80967, 2017 WL 4868185, at *1 (S.D. Fla. 2017) (staying a putative TCPA class action pending FCC determination of petition for declaratory ruling).

To that end, courts have developed the primary jurisdiction doctrine, which permits a court to stay proceedings (or dismiss a complaint without prejudice) pending agency guidance when a claim presents an "issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015). The primary jurisdiction doctrine is intended to serve as a means of "'coordinat[ing] judicial and administrative decision making,'" *Sancom v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1035 (D.S.D. 2010) (citation omitted), and to "promote[ ] uniformity, consistency, and the optimal use of the agency's expertise." *United States v. Henderson*, 416 F.3d 686, 691 (8th Cir. 2005). Application of the doctrine is appropriate where conduct is alleged which is "at least arguably protected or prohibited by a regulatory statute," and agency resolution "is likely to be a material aid to

15

any judicial resolution." *Mendoza v. Unitedhealth Grp. Inc.*, No. C 13–1553, 2014 WL 722031, at *1 (N.D. Cal. Jan. 6, 2014) (staying putative TCPA class action pending FCC resolution of various petitions regarding the ATDS definition) (quotation marks and citation omitted). Indeed, the doctrine "promot[es] proper relationships between the courts and administrative agencies charged with particular regulatory duties." *W. Pac. R.R.*, 352 U.S. at 63; *Great Lakes Commc'n Corp. v. AT&T Corp.*, No. C13-4117, 2018 WL 6072004, at *3 (N.D. Iowa Nov. 20, 2018) (refusing to lift stay entered pending FCC resolution of certain issues). At bottom, the primary jurisdiction doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003); *Williams v. TGI Friday's Inc.*, No. 4:15-CV-1469, 2016 WL 1453032, at *2 n.2 (E.D. Mo. Apr. 12, 2016) (staying TCPA action pending FCC ruling on whether defendant's calling platform falls within the definition of an ATDS); *Passero v. Diversified Consultants, Inc.*, 13–CV–338, 2014 WL 2257185, at *1 (W.D.N.Y. May 28, 2014) (same as *Williams*).

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," the Supreme Court has provided a framework for determining when the doctrine applies. *W. Pac. R.R.*, 352 U.S. at 64. First, the court must determine whether a statute grants an administrative agency authority over the issues that are potentially subject to primary jurisdiction. *Id.* Second, the court must decide "whether the purposes [that the doctrine] serv[e] will be aided by its application in particular litigation." *Id.* The Eighth Circuit has articulated the *Western Pacific Railroad* standard as being based

16

on consideration of two factors: (1) whether the legal issue falls within the agency's area of expertise and (2) the promotion of uniformity and consistency.  *Union Elec. Co. v. Cable One, Inc*., No. 4:11-CV-299, 2011 WL 4478923, at *4 (E.D. Mo. Sept. 27, 2011) (citing *Alpharma Inc. v, Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005)); *Minn. Indep. Equal Access Corp. v. Sprint Commc'ns Co., LP*, No. 10-2550 (MJD/SER), 2011 WL 3610434, at *4 (D. Minn. Aug. 15, 2011); *Sprint Spectrum, LP v. AT&T Corp*., 168 F. Supp. 2d 1095, 1097-98 (W.D. Mo. 2001) ("[T]here are two primary reasons that courts apply the doctrine of primary jurisdiction.  The first, and most common, 'is to obtain the benefit of an agency's expertise and experience.' . . . The second reason 'is to promote uniformity and consistency within the particular field of regulation.'") (internal citations omitted).

Under this framework, staying an action on primary jurisdiction grounds is appropriate while an agency considers petitions for declaratory relief, like the Joint Petition that underlies the FCC's May 2018 Public Notice.  *Sw. Bell Tel., L.P. v. Vartec Telecom, Inc.*, 4:04-CV-1303, 2008 WL 4948475, at *1-2 (E.D. Mo. Nov. 10, 2008) (refusing to lift stay where "the agency has continued to receive comments on intercarrier compensation issues and IP-enabled services" in response to agency public notice); *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Protection*, 196 F.3d 302, 304 (1st Cir. 1999) ("[A]bsent extraordinary delay or other factors not present here[] the doctrine [of primary jurisdiction] compels us to defer our decision until a final [agency] position has been established.").  Indeed, the number of courts staying or dismissing TCPA actions pending FCC resolution of petitions for declaratory rulings is legion.  *See*,

*e.g.*, *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 1:19-cv-20073, Order Administratively Closing Case (ECF 81) (S.D. Fla. July 15, 2019) (*sua sponte* staying action pending ruling from FCC clarifying ATDS definition); *Reyes*, No. 16-24077, Order Granting Def.'s Mot. to Stay Proceedings (ECF 200) (S.D. Fla. July 10, 2019) (staying action pending ruling from FCC clarifying ATDS definition); *Secure v. Ultimate Fitness Grp., LLC*, No. 18-20483, Order Granting Mot. to Stay (ECF 64) (S.D. Fla. Mar. 18, 2019) (same as *Reyes*); *Zannini v. Xpress Urgent Care, LLC*, No. 2:18-cv-14388, Order Staying Case and Directing the Clerk of the Court to Close This Case for Statistical Purposes (ECF 17) (S.D. Fla. Nov. 20, 2018) (same as *Reyes*);[10] *Laccinole*, *supra*, at 5 (staying TCPA action alleging that ADT placed unlawful autodialed and prerecorded message collection calls to plaintiff); *Buhr*, *supra*, at 4-5 (staying putative TCPA class action against ADT alleging unlawful autodialed and prerecorded message collection calls pending current FCC proceedings); *Eady v. Enhanced Recovery Co.*, No. 3:17-cv-01008, Order (ECF 46) (M.D. Fla. Aug. 23, 2018), (staying TCPA collection call action alleging unsolicited autodialed and prerecorded message calls under primary jurisdiction doctrine pending current FCC proceedings); *Thomas v. Smith-Palluck Assocs.*, No. 2:17-cv-02001, 2018 U.S. Dist. LEXIS 152211, at *3-5 (D. Nev. Sept. 6, 2018) (staying TCPA case pursuant to primary jurisdiction doctrine and court's inherent authority pending

---

[10]     Just a few weeks ago, the *Zannini* court extended the stay to allow the FCC time to clarify the ATDS definition.  *See* No. 2:18-cv-14388, Order (ECF 23) (S.D. Fla. Oct. 31, 2019).

current FCC proceedings because the agency is "poised" to clarify ATDS definition).[11]

---

[11]     *See also*, *e.g.*, *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, No. 17-3801, 2018 WL 4206933, at *6 (D. Md. Sept. 4, 2018); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41, 2018 WL 2455301, at *3-4 (M.D. Fla. June 1, 2018); *M3 USA*, 2017 WL 4868185, at *2-3; *Degnen v. Dental Fix RX, LLC*, No. 4:15-CV-1372, 2016 WL 4158888, at *3 (E.D. Mo. Aug. 5, 2016); *Barron's Outfitters Inc. v. Big Hairy Dog Info. Sys. & Retail Pro Int'l, LLC*, No. 14-04335, Order (ECF 30) (D.S.C. June 19, 2015); *Wright v. Lyft, Inc.*, No. 14-421, 2015 WL 12977403, at *2-3 (W.D. Wash. Jan. 6, 2015); *Jones v. Am. Credit Acceptance Corp.*, No. 14- 04130, Text Order (ECF 18) (D.S.C. Feb. 25, 2015); *Beck Simmons LLC v. Francotyp-Postalia, Inc.*, No. 14-1161, Op., Mem. and Order (ECF 31) (E.D. Mo. Feb. 17, 2015); *Physicians Healthsource, Inc. v. Endo, Inc.*, 14-02289, Order (ECF 27) (E.D. Pa. Jan. 5, 2015); *Stewart v. T-Mobile USA, Inc.*, No. 4:14-cv-02086, 2014 WL 12614418, at *3-6 (D.S.C. Oct. 8, 2014);  *Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-00201, 2014 WL 4662512, at *2-3 (S.D. Ala. Sept. 19, 2014); *Wahl v. Stellar Recovery, Inc.*, No. 14-CV-6002, 2014 WL 4678043, at *2-3 (W.D.N.Y. Sept. 18, 2014); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-cv-514, 2014 WL 4187250, at *2-3 (E.D. Cal. Aug. 21, 2014) (England, C.J.); *Lee v. loanDepot.com*, No. 14-1084, 2014 WL 4145504, at *1-2 (D. Kan. Aug. 20, 2014); *Passero*, 2014 WL 2257185, at *2-3; *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798, Order Staying Case (ECF 105) (S.D. Fla. May 23, 2014); *Physicians Healthsource, Inc. v. Masimo Corp.*, No. 14-00001, Minute Order (ECF 47) (C.D. Cal. May 22, 2014); *Gusman v. Comcast Corp.*, No. 13-cv-1049, 2014 WL 2115472, at *1-5 (S.D. Cal. May 21, 2014); *In re Portfolio Recovery Assocs. TCPA Litig.*, No. 11md2295, 2014 WL 12603110, at *2-3 (S.D. Cal. May 20, 2014); *Kaye v. Merck & Co*., No. 3:10-01546, Ruling and Order (ECF 126) (D. Conn. May 15, 2014); *Higginbotham v. Diversified Consultants, Inc.*, No. 2:13-cv-02624, 2014 WL 1930885, at *1-4 (D. Kan. May 14, 2014); *Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343, 2014 WL 1942829, at *2-4 (N.D. Cal. May 12, 2014); *Whiteamire Clinic, P.A. v. Quill Corp.*, No. 1:12-05490, Order (ECF 170) (N.D. Ill. Apr. 9, 2014); *Matlock v. United Healthcare Servs., Inc.*, No. 2:13-cv-02206, 2014 WL 1155541, at *1-2 (E.D. Cal. Mar. 20, 2014); *Hurrle v. Real Time Resolutions, Inc.*, No. C13–5765, 2014 WL 670639, at *1-2 (W.D. Wash. Feb. 20, 2014); *Mendoza*, 2014 WL 722031, at *2; *Physicians Healthsource, Inc. v. Purdue Pharma, L.P.*, No. 12-001208, Ruling on Mot. to Stay (ECF 101) (D. Conn. Feb. 3, 2014); *Fried v. Sensia Salon, Inc.*, No. 4:13-cv-00312, 2013 WL 6195483, at *4-6 (S.D. Tex. Nov. 27, 2013);  *St. Louis Heart Ctr. v. Gilead Palo Alto, Inc.*, No. 4:13–CV–958, 2013 WL 5436651, at *1-2 (E.D. Mo. Sept. 27, 2013); *Raitport v. Harbour Cap. Corp.*, No. 09-156, Order (ECF 85) (D.N.H. Sept. 12, 2013); *Burik v. Staples Contract and Commercial, Inc.*, No. 1:12-cv-10806, Order (ECF 90) (D. Mass. Aug. 9, 2013); *St. Louis Heart Ctr. v. Forest Pharms., Inc.*, No. 4:12CV2224, 2013 WL 3988671, at *1 (E.D. Mo. July 17, 2013); *Glauser v. Twilio, Inc.*, No. C 11-2584, 2012

This Court too should exercise its broad discretion to stay this litigation pending the FCC's resolution of the Joint Trade Petition and the issues raised in the agency's own *sua sponte*-issued May and October 2018 Public Notices. As described more fully below, a stay will promote all of the aforementioned interests, is supported by proper application of the primary jurisdiction doctrine, and would constitute a sound exercise of the Court's inherent discretion to control its docket. *See Sprint Spectrum*, 168 F. Supp. 2d at 1097.

> **1. This Litigation Involves a Determination that Lies at the Heart of the Task Congress Assigned the FCC, and the FCC's Expertise and Experience is Required to Unravel Intricate, Technical Facts**

The first primary jurisdiction doctrine consideration – "'to obtain the benefit of an agency's expertise and experience,'" *id.* (quoting *Access Telecommc'ns v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) – easily supports a stay here.

"The TCPA vests the FCC with the authority to 'prescribe regulations to implement the requirements of [the statute].' This includes issuing rules clarifying and interpreting the TCPA, as well as addressing petitions like" the Joint Trade Petition and the ATDS and revocation of consent issues raised *sua sponte* by the FCC in its Public Notices. *M3 USA*, 2017 WL 4868185, at *2 (citations omitted). The FCC has technical, TCPA-related expertise that is perfectly suited for evaluating complicated and ever-changing dialing technology, and such technologies' uses in everyday operations for non-telemarketing purposes, such as the collection calls that underlie Plaintiff's Complaint.

---

WL 259426, at *1-3 (N.D. Cal. Jan. 27, 2012); *Greene v. T-Mobile USA, Inc.*, No. C07-1563, 2008 WL 351017 (W.D. Wash. Feb. 7, 2008).

*Charvat v. Echostar Satellite LLC*, 630 F.3d 459, 467 (6th Cir. 2010); *United States v. Dish Network, LLC*, No. 09-3073, 2011 WL 475067, at *2 (C.D. Ill. Feb. 4, 2011). Further, the FCC is accustomed to considering these technological issues. *Charvat*, 630 F.3d at 467 ("The agency, no surprise, is familiar with the regulations *it* prescribed, and possesses expertise over the statute it implements[.]") (emphasis in original); *Pickens*, 2014 WL 4662512, at *2 (FCC "has expertise in the telecommunications area due to the fact that the TCPA . . . ha[s] been entrusted to its care for interpretation and implementation"). "It is virtually without dispute that the FCC has comparative expertise with regard to the TCPA." *Stewart*, 2014 WL 12614418, at *4. "'The implementation and interpretation of the TCPA have been placed squarely within the jurisdiction of the FCC.'" *Freeman v. Specialty Retailer Inc*., No. 14-2691, 2015 WL 12804530, at *2 (S.D. Tex. Jan. 20, 2015) (staying TCPA litigation pending FCC ruling on petition) (quoting *Pickens*, 2014 WL 4662512, at *2).

"The FCC has already responded to the Petition by opening a notice-and-comment rulemaking proceeding and receiving public comment. This, coupled with the directive from Congress regarding the scope of the FCC's jurisdiction, is sufficient" to justify a stay under the primary jurisdiction doctrine. *M3 USA*, 2017 WL 4868185, at *2. So too here. The FCC already has issued its May and October 2018 Public Notices "seek[ing] comment" from the public on, among other things, the ATDS and revocation of consent issues implicated in this case. *See generally* May and October 2018 Public Notices. As of June 13, 2018, when initial comments were due as to the May 2018 Public Notice, *see* May 2018 Public Notice, at 1, the FCC received 40 comments by various stakeholders,

including industry and members of the TCPA plaintiffs' bar, in response to its Public Notice.  *See* November 25, 2019 Declaration of Daniel S. Blynn ("Blynn Decl.") Exh. "1."  Thirty-one additional comments were filed with the FCC by June 28, 2018 when reply comments were due pursuant to that Public Notice.  *Id*. Exh. "2."  And nearly 120 comments were filed in response to the FCC's October 2018 Public Notice.  *Id*. Exh. "3."

Moreover, there have been a number of meetings held in since June 2018 between various stakeholders, including ADT, and the FCC Commissioners' offices (and the FCC's Consumer and Governmental Affairs Bureau) relating to the issues raised in the Joint Trade Petition and Public Notices.  *See, e.g.*, *id*. ¶¶ 5-30.  Further, the FCC has released letters that Chairman Pai wrote to a number of U.S. Senators and Congressmen stating that "***Commission staff continue to review the record*** developed to resolve issues related to what constitutes an '[ATDS]' as well as the scope of a consumer's right to revoke prior express consent to receive robocalls[,]" and that "***[t]he Commission is now poised to examine and reconsider these issues.***"  *See* Oct. 25, 2019 Ltrs. to Sens. Durbin and Duckworth (emphasis added); Sept. 7, 2018 Ltrs. to Reps. Buck, McKinley, and Zeldin (emphasis added) (*available at* https://www.fcc.gov/chairman-pais-letters-congress).  There can be no doubt that the FCC, as Chairman Pai confirmed, is "poised" to clarify the ATDS definition and consent revocation issues that underlie Plaintiff's Complaint, and no serious argument that the FCC is not actively considering these issues and moving towards a declaratory ruling.

As described above, the contours of the TCPA's consent revocation rules and the statute's autodialer definition, including the meaning of "capacity" within that definition,

are determinations that have led to conflicting decisions and varied interpretations amongst the courts. *See Wright*, 2015 WL 12977403, at *3 (granting stay pending FCC determination of petitions concerning ATDS definition because, among other reasons, "courts have taken varied approaches to interpreting 'ATDS' creating a conflicting body of law"); *see also Thompson-Harbach*, 359 F. Supp. 3d at 628-29 (noting conflicting decisions with respect to revocation of contractual consent). As such, the determinations of whether and how contractual consent may be revoked, and whether a calling platform's functionality does or does not fall within the TCPA's definition of ATDS involve technical and policy considerations that are within the FCC's discretion. *Fried*, 2013 WL 6195483, at *4 ("The FCC has particular expertise in this field of telecommunications [*i.e.*, the definition of ATDS], enabling the agency to make a decision based on technical and technological knowledge not necessarily available to this Court. . . . [T]he FCC is in prime position to determine whether the use of this technology violates the TCPA."). The TCPA is a statute within the FCC's particular field of expertise, and Congress vested the Commission with considerable authority to implement it. *See Charvat*, 630 F.3d at 466-670 (holding that district court should have invoked the doctrine of primary jurisdiction to allow FCC to address issues involved in litigation; "Congress vested the FCC with considerable authority to implement the [TCPA]. . . . In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the TCPA and its implementing regulations") (citation omitted); *Wright*, 2015 WL 12977403, at *3 ("Congress has vested in the FCC considerable authority to make rules and regulations to implement the TCPA.").

In resolving summary judgment, the Court will need to address Plaintiff's core legal theories that she was permitted to and did revoke the bargained-for prior express consent that she provided pursuant to the contract between the parties, and that ADT's calls were placed by an ATDS.  For, if the FCC finds that Plaintiff was prohibited from unliterally revoking the consent that she gave to ADT as consideration underlying her service agreement with ADT (or failed to follow the reasonable means of revoking such consent as outlined in her contract), then there can be no liability for any autodialed or prerecorded message call Plaintiff received.  Similarly, if an ATDS was not used, there is no liability under the TCPA as to collection calls that did not deliver a prerecorded message.  These are questions that arise from the TCPA, and currently are pending before and properly resolved by the FCC.  Indeed, if the Commission finds that (1) contractual consent cannot be unliterally revoked (or, if a contract provides a reasonable means for revocation, consent must be revoked accordingly); (2) in order to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention; (3) only calls made using actual ATDS capabilities are subject to the TCPA's autodialer restrictions; and/or (4) predictive dialers and other platforms that call from lists of telephone numbers are not autodialers, those determinations will be binding on this Court.  *See, e.g.*, *Ranwick v. Texas Gila, LLC*, 37 F. Supp. 3d 1053, 1057 (D. Minn. 2014) (rejecting plaintiff's argument that FCC orders are not binding on the court and explaining that, under the Hobbs Act, only courts of appeals may determine the validity of FCC orders) (citing *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013)); *Murphy v. DCI Biologicals*

*Orlando, LLC*, No. 6:12-cv-1459-Orl–36KRS, 2013 WL 6865772, at *8 (M.D. Fla. Dec. 31, 2013) ("this Court finds the FCC's 1992 Order is binding here and, under the Hobbs Act, is not subject to review except by the federal courts of appeals"); *see also* 28 U.S.C. § 2342(1) (federal Courts of Appeals have the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the FCC" made reviewable by 47 U.S.C. § 402(a)).  .

Given that the FCC is considering core legal issues that not only need to be decided in this litigation, but likely are dispositive of Plaintiff's claims, the first primary jurisdiction doctrine factor weighs heavily in favor of a stay.  "[A]llowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate." *Glauser*, 2012 WL 259426, at *3 (staying putative TCPA class action because "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed").  Because the FCC is set to decide fundamental issues in this case, the Court should stay the litigation until the agency does so.

### 2. Avoiding Inconsistent Rulings Regarding Revocation of Contractual Consent and the ATDS Definition, and Promoting Uniformity Is Imperative In Maintaining A Comprehensive Regulatory Scheme

The second primary jurisdiction factor – whether there is a danger of inconsistent rulings, *Sprint Spectrum*, 168 F. Supp. 2d at 1098 – also supports a stay.

In enacting the TCPA, the "clear intent of Congress" was to "promote a uniform

regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations . . . ." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14064-65 (2003).  The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.  *Sprint Spectrum*, 168 F. Supp. 2d at 1097-98.  "[T]hrough the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent . . . significant inconsistent applications of FCC rules."  *S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n*, 744 F.2d 1107, 1118 (5th Cir. 1984), *vacated on other grounds*, 476 U.S. 1166 (1986); *Charvat*, 630 F.3d at 466 (staying case because, among other things, the TCPA and its regulations control "services nationally, creating the possibility of conflicting decisions in different state and federal jurisdiction"); *Barahona v. T-Mobile USA, Inc.*, 628 F. Supp. 2d 1268, 1272 (W.D. Wash. 2009) ("In view of the disparity between the cases cited by the parties, the Court finds that the interest of uniformity weighs heavily in favor of deferring to the expertise of the FCC under the primary jurisdiction doctrine.").

The need for uniformity on the issues of whether contractual consent may be revoked at all and, if so, how, and what is and is not an autodialer (and, in particular, whether predictive dialers fall within the TCPA's ATDS definition in the wake of *ACA Int'l*) is clear.  For that reason and others, as explained above, the *Buhr* and *Laccinole* courts stayed (and, in the case of *Buhr*, rejected several attempts by that plaintiff to lift the stay, *see supra* at 5 n.6) TCPA actions against ADT alleging that it made unlawful autodialed and prerecorded message collection calls.  *See supra* at 4-5.  This Court should

issue a stay as well and allow the FCC to determine the revocation of consent and ATDS issues implicated by Plaintiff's Complaint.

### B. The Court Can and Should Stay This Litigation in the Exercise of Its Own Discretion

While, as detailed above, a stay is well-warranted under the primary jurisdiction doctrine, the Court also has independent authority to stay this case pursuant to its inherent powers to control its docket.  As the Supreme Court has explained, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis*, 299 U.S. at 254; *Christianson v. Ocwen Loan Serv'g, LLC*, No. 17-1525 (DWF/TNL), 2017 WL 5665211 (D. Minn. Nov. 20, 2017) (same).

A stay would promote judicial economy, conserve both the Court's and parties' resources, and promote uniformity of decision.  Absent a stay, the Court risks issuing a decision that conflicts with, and is preempted by, the FCC's forthcoming rulings on the consent revocation and ATDS issues raised by the Joint Trade Petition and the March and October 2018 Public Notices seeking comment.  *See Keim v. ADF Midatlantic, LLC*, 199 F. Supp. 3d 1362, 1368 n.4 (S.D. Fla. 2016); *Murphy*, 2013 WL 6865772, at *8; *see also* 28 U.S.C. § 2342(1).  At bottom, "[t]he Court will be in a better position to proceed to judgment with definitive guidance from the FCC."  *Gensel*, 2015 WL 402840, at *3.

A stay pending the FCC's rulings also would be in line with other courts that have stayed TCPA litigations based on their inherent powers to control their dockets.  *See, e.g.*, *Miller v. Directv, LLC*, No. 14-07579, 2015 WL 12656912, at *3 (C.D. Cal. Jan. 8, 2015)

("In the interests of conserving the parties' and the Court's resources and preventing inconsistent rulings and requests for reconsideration that may ensue, the Court instead *sua sponte* exercises its prudential authority to stay the action pending the FCC's resolution of the . . . Petitions"); *Fontes v. Time Warner Cable Inc.*, No. 14-cv-02060, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) ("A stay is appropriate because it increases the likelihood that the Court will be able to address the parties' arguments after the FCC has acted on the Petitions."); *see also Christianson*, 2017 WL 5665211, at *1-2 (staying TCPA litigation pending decision in *ACA Int'l*).   Where the FCC is actively considering potentially dispositive issues, the Court is well within its sound discretion to stay this action.   And the Court should do so.   A stay will conserve judicial and party resources, prevent inconsistent rulings, and promote fairness in decisions on consent revocation and ATDS issues on which the Commission is poised to issue an authoritative interpretation.

## CONCLUSION

For the foregoing reasons, the Court should grant ADT's Motion and stay this litigation pending the FCC's rulings on the consent revocation and ATDS issues raised in the Joint Trade Petition and articulated in the May and October 2018 Public Notices.

Dated:  November 26, 2019

Respectfully submitted,

/s/ *David J. Koob*
David J. Koob, #0307282
DONNA LAW FIRM, P.C.
7601 France Avenue, Suite 350
Minneapolis, MN 55435
Tel: (952) 562-2460
Fax: (952) 562-2461
dkoob@donnalaw.com

Daniel S. Blynn (*pro hac vice* forthcoming)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
dsblynn@venable.com

*Attorneys for Defendant ADT LLC of Delaware*
*d/b/a ADT Security Services*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2019, I have electronically filed a copy of the foregoing Defendant's Memorandum of Law in Support of its Motion to Stay using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants duly registered to receive service of filings in this case.

/s/ *David J. Koob*
David J. Koob

*Attorneys for Defendant ADT LLC of*
*Delaware d/b/a ADT Security Services*